UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 5:20-cv-02550-JLS-SP          Date: June 08, 2021
Title: Blanca Sanchez v. Carpenter Co. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANTS:

Not Present                                          Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING MOTION TO REMAND (Doc. 9)**

Before the Court is Plaintiff's Motion to Remand. (Mot., Doc. 9.) Defendant opposed, and Plaintiff replied. (Opp., Doc. 20; Reply, Doc. 21.) Having taken the matter under submission and for the following reasons, the Court GRANTS Plaintiff's Motion.

**I. BACKGROUND**

This is a putative employment class action brought by Plaintiff Blanca Sanchez ("Sanchez") against her former employer Defendant Carpenter Co. d/b/a E.R. Carpenter Company, Inc. ("Carpenter"). (Compl., Doc. 1-1.) Sanchez seeks to represent a class of "[a]ll current and former California-based . . . hourly-paid and non-exempt employees of [Carpenter] within the State of California at any time during the period from April 24, 2016 to final judgment." (Compl. ¶ 13.)

Sanchez alleges that Carpenter "engaged in a systematic pattern of wage abuse against [its] hourly-paid and non-exempt employees within the State of California." (*Id.* ¶ 24.) On October 19, 2020, Sanchez filed suit in Riverside Superior Court, asserting eight California-law claims against Sanchez for (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wages; (5) final

wages not timely paid; (6) non-compliant wage statements; (7) unreimbursed business expenses; and (8) violation of the California Business and Professions Code § 17200. (*Id.* ¶¶ 43–101.)

On December 10, 2020, Carpenter removed the case to this Court under the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d).  (Notice of Removal ("NOR"), Doc. 1.)  On January 11, 2021, Sanchez moved to remand this case to Riverside County Superior Court.  (Mot.)

## II.   LEGAL STANDARD

"[CAFA] vests federal courts with original diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, (2) the proposed class consists of at least 100 class members, (3) the primary defendants are not States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief, and (4) any class member is a citizen of a state different from any defendant." *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *1 (C.D. Cal. Feb. 5, 2018) (Staton, J.) (citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007)); 28 U.S.C. § 1332(d).[1]

"In determining the amount in controversy [under CAFA], courts first look to the complaint.  Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)).  Where damages are not explicitly pleaded or evident from the face of the complaint, and federal jurisdiction is questioned on that basis, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id.* (citing *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013)).  As this Court described in *Mortley*,

---

[1] Moreover, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

"[a] defendant's preponderance burden 'is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages.'" 2018 WL 708115, at *2 (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)); *and see Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation."). This is in line with the Ninth Circuit's characterization of "amount in controversy" as "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The Ninth Circuit has also held that "CAFA's [amount-in-controversy] requirements are to be tested by consideration of [1] *real evidence* and [2] *the reality of what is at stake in the litigation*, using [3] *reasonable assumptions* underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198 (emphasis added).

### III. DISCUSSION

At issue here is CAFA's amount-in-controversy requirement. Sanchez argues that remand is proper because Carpenter has failed to establish the CAFA amount in controversy by a preponderance of the evidence. (Mot. at 4.) Sanchez raises various objections to the amount-in-controversy calculation Carpenter proffers in support of each claim. As discussed below, the Court concludes the violation rates underlying Carpenter's calculations for the claims for overtimes wages, minimum wages, and meal and rest break premiums are arbitrary and unreasonable. Without establishing the validity of the violation rates used in these calculations, Carpenter cannot meet the CAFA jurisdictional amount. Accordingly, the Court GRANTS Sanchez's Motion on that basis and need not reach Sanchez's alternative arguments.

Carpenter contends that Sanchez's claims place an estimate of $5,283,065.29 in

controversy. (Opp. at 25.)[2] As evidence, Carpenter proffers the declaration of Holly N. Earnshaw, the Vice President of Human Resources at Carpenter. (Earnshaw Decl., Doc. 20-1.) Earnshaw states that, over the four-year class period, Carpenter employed 462 putative class members and that those employees worked an aggregate total of 222,684 days. (*Id.* ¶ 6(d).) Earnshaw also provides data about the aggregate total of the putative class members' workdays that were longer than 8 hours, and the aggregate total of the putative class members' shifts that were over 4 hours and 5 hours. (*Id.*) Finally, Earnshaw states that the employees worked an average of 8.88 recorded hours per workday—calculated by dividing the total number of hours those employees worked by the number of days they worked during that same period—and were paid an average regular rate of $12.85 per hour. (*Id.*)

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the $5,000,001 amount-in-controversy figure CAFA requires." *Marlowe Cackin v. Ingersoll-Rand Indus. U.S., Inc.*, No. 8:20-CV-02281-JLS-JDE, 2021 WL 2222217, at *2 (C.D. Cal. June 2, 2021) (Staton, J.) (quoting *Toribio v. ITT Aerospace Controls LLC*, 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019).) Here, Carpenter's unpaid overtime and unpaid minimum wages calculations assume that every putative class member worked one hour of unpaid overtime per week (*i.e.*, 0.2 hours per day).[3] (Opp. at 8–10.) And Carpenter's meal and rest break premium calculations assume a violation rate of 25%.[4] (Opp. at 11–18.)

---

[2] In its Notice of Removal, Carpenter contended that Sanchez's Complaint places $16,803,586.58 in controversy (NOR ¶ 51), but in its opposition, Carpenter adjusts some of the assumptions underlying its calculations and adjusts its amount-in-controversy estimate.

[3] Based on this assumption, Carpenter calculates the amount placed in controversy by the unpaid overtime claim to be $858,669.50 (222,684 workdays x 0.2 hours/workday x $19.28 overtime wage rate), and it calculates the amount placed in controversy by the minimum wage claim to be $445,368.00 (222,684 workdays x 0.20 hours/workday x $10 minimum wage rate).

[4] Carpenter calculates that the amount placed in controversy by the meal and rest break claims is $1,430,744.70. That is, Carpenter estimates that the meal break and the rest break

Carpenter bases these assumptions on nothing more than the broad language of Sanchez's Complaint.  Specifically, Carpenter notes that the Complaint alleges Carpenter "engaged in a pattern and practice of wage abuse against [putative class members]," (Compl. ¶ 24), and that "as a pattern and practice" Carpenter failed to pay her and the putative class members overtime and minimum wages, and to provide them with meal and rest breaks (Compl. ¶¶ 35–37, 62, 70).[5]  Carpenter's argument boils down to this: given the vague language of the Complaint, Carpenter would be entitled to assume a 100% violation rate; therefore, Carpenter reasons, its "conservative" assumptions about the violation rates here are "reasonable."  (Opp. at 10, 11, 14.)  In other words, there appears to be no significance to the violation rates Carpenter proposes other than that they are lower than the rates some district courts have approved in some cases where the complaints alleged a "pattern and practice" of wage violations.

This Court recently explained "the shortcomings of determining a 'reasonable' violation rate based solely on vague complaint language[.]"  *Cackin*, 2021 WL 2222217, at *2.  In *Cackin*, the defendant proffered as evidence only a declaration that provided data about the putative class members' total wages and hours during the relevant period.  *Id.* at *3.  "Nothing in the declaration purport[ed] to provide evidence that would assist the Court in making a reasonable assumption as to the applicable violation rate."  *Id*.  Instead, the defendant in *Cackin* translated the "systemic pattern" language in plaintiff's complaint to a 40%—or twice a week—violation rate, an estimate defendant labeled as "conservative," as Carpenter does here.  *Id.*  The plaintiff in *Cackin* disputed that assumption, but conceded that a lower violation rate of 20%, or once every five days, may be reasonable for these claims.  *Id.*  This Court, however, rejected an approach to calculating violation rates that "amounts to little more than plucking a violation rate out of the air and calling it 'reasonable.'"  *Id.*  As the Court explained in *Cackin*, "[i]f one is

---

violation each place $715,372,35 in controversy (222,684 total workdays x 25% violation rate x $12.85 regular hourly rate).

[5] Carpenter's calculations ignore the language in the Complaint stating that not all members of the putative class were affected by the "pattern and practice" of wage violations. (*See* Compl. at ¶¶ 5, 10, 17, 23, 29, 34, 39, 49, 57-62, 69-71, 87, 94, 100.)

going to assume a violation rate based on nothing more than language in a complaint referencing a 'pattern and practice,' then there is no basis for suggesting that a violation rate of [20% or 40%] is any more or less reasonable than a violation rate of once per week or once per month." *Id.* (citing *Vanegas v. DHL Express (USA), Inc.,* No. CV 21-01538 PA (JCX), 2021 WL 1139743, at *3 (C.D. Cal. Mar. 24, 2021).)

      The Court further noted in *Cackin* that "[f]aced with a vague pleading . . . the much-more-sensible route would be [for defendants] to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face [when removing under CAFA]) with respect to what the Complaint's allegations actually mean with respect to violation rates" by engaging in discovery. *Cackin*, 2021 WL 2222217, at *4 (citing *Toribio*, 2019 WL 4254935, at *3).

      The Court's analysis in *Cackin* applies with equal force here. Ultimately, it is Carpenter's burden to establish CAFA's amount-in-controversy requirement by a preponderance of the evidence, and Carpenter has failed to meet its burden here because it does not proffer any evidence in support of the violation rates it employs in its calculations. Nor has Carpenter provided any analysis of why its assumed violation rates are any more reasonable than any other arbitrary violation rates. Instead, Carpenter assumes that it can meet its burden by calling the violation rate it chooses "conservative." But the Ninth Circuit's *Ibarra* holding did not authorize calculation of CAFA's amount-in-controversy requirement based on a purported "conservative" damages theory; rather, *Ibarra* held that the amount in controversy must be based on "*reasonable assumptions* underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198 (emphasis added). There is nothing reasonable about an assumed violation rate that has no basis in the complaint or the proffered evidence. That Carpenter's Opposition adjusts the $16,803,586.58 amount-in-controversy figure asserted in the Notice of Removal to $5,283,065.29 in its Opposition simply by adjusting the assumed violation rate underscores that its proposed rates are plucked out of the air and not based on any principled assumptions about the putative class.

      Accordingly, Plaintiff's Motion is GRANTED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:20-cv-02550-JLS-SP                                         Date: June 08, 2021
Title:  Blanca Sanchez v. Carpenter Co. et al

## IV.     **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand. This action is hereby REMANDED to the Superior Court of California, County of Riverside, originally commenced as RIC 2004219.

                                                            Initials of Deputy Clerk: mku